**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| ROBERT MAYFIELD, *et al.*, <br><br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF LABOR, *et al.*, <br><br><br> Defendants. | Case No. 1:22-CV-00792-RP |

## <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 2

    I.     Statutory Background ................................................................................ 2

    II.    Pre-2019 Regulatory History ................................................................... 4

    III.   2019 Final Rule ........................................................................................ 7

LEGAL STANDARD ....................................................................................................... 9

ARGUMENT .................................................................................................................... 9

    I.     The Secretary of Labor Has Statutory Authority to Promulgate a Salary
         Level Test ................................................................................................ 9

         A.    The Fifth Circuit has already upheld the Department's salary level
             test. ................................................................................................. 10

         B.    The salary level test is wholly consistent with, and certainly not
             manifestly contrary to, the FLSA .............................................. 11

         C.    Plaintiffs' proposed limiting constructions do not apply. ......... 16

         D.    Congress has ratified the salary level test. ................................ 19

    II.    The FLSA is a Lawful Delegation of Congressional Authority. .......... 23

CONCLUSION ................................................................................................................ 27

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*A.L.A. Schechter Poultry Corp. v. United States*,
  295 U.S. 495 (1935)........................................................................................... 24

*Addison v. Holly Hill Fruit Products,
  Inc.*, 322 U.S. 607 (1944)............................................................................... 15, 16

*Ala. Ass'n of Realtors v. HHS*,
  141 S. Ct. 2485 (2021)................................................................................... 18, 19

*Alstate Constr. Co. v. Durkin*,
  345 U.S. 13 (1953)........................................................................................... 20

*Am. Power & Light Co. v. SEC*,
  329 U.S. 90 (1946)....................................................................................... 24, 25

*Am. Stewards of Liberty v. Dep't of the Interior*,
  370 F. Supp. 3d 711 (W.D. Tex. 2019)............................................................. 9

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)........................................................................................... 9

*Auer v. Robbins,*
  519 U.S. 452 (1997)..................................................................................... 11, 13

*Barrentine v. Arkansas-Best Freight Sys., Inc.*,
  450 U.S. 728 (1981)....................................................................................... 2, 26

*Big Time Vapes, Inc. v. FDA*,
  963 F.3d 436 (5th Cir. 2020) ....................................................................... 24, 25

*CFTC v. Schor*,
  478 U.S. 833 (1986)........................................................................................... 22

*Chevron, U.S.A. v. Nat. Res. Def. Council*,
  467 U.S. 837 (1984)............................................................................... 9, 11, 12

*Costanzo v. Tillinghast*,
  287 U.S. 341 (1932)........................................................................................... 22

*Davis v. J.P. Morgan Chase*,
  587 F.3d 529 (2d Cir. 2009)............................................................................. 26

*Encino Motorcars, LLC v. Navarro*,
   138 S. Ct. 1134 (2018) ............................................................................................ 26

*Fanelli v. U.S. Gypsum Co.*,
   141 F.2d 216 (2d Cir. 1944) ...................................................................... 10, 22, 23

*FDA v. Brown & Williamson Tobacco Corp.*,
   529 U.S. 120 (2000) ........................................................................................ 17, 18

*Gundy v. United States*,
   139 S. Ct. 2116 (2019) ............................................................................................ 23

*Hamilton v. Segue Software Inc.*,
   232 F.3d 473 (5th Cir. 2000) .................................................................................... 9

*Jarkesy v. SEC*,
   34 F.4th 446 (5th Cir. 2022) .................................................................................. 26

*Lichter v. United States*,
   334 U.S. 742 (1948) ................................................................................................ 24

*Long Island Care at Home, Ltd. v. Coke*,
   551 U.S. 158 (2007) ...................................................................... 12, 13, 16, 17

*Loving v. United States*,
   517 U.S. 748 (1996) ................................................................................................ 24

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*,
   456 U.S. 353 ...................................................................................................... 21, 22

*Mistretta v. United States*,
   488 U.S. 361 (1989) ............................................................................ 23, 24, 25, 26

*Mitchell v. Ky. Fin. Co.*,
   359 U.S. 290 (1959) ................................................................................................ 20

*National Broadcasting Co. v. United States*,
   319 U.S. 190 (1943) ................................................................................................ 25

*Nat'l Fed'n of Indep. Bus., ("NFIB") v. OSHA*,
   142 S. Ct. 661 (2022) .............................................................................................. 18

*Nevada* v. *U.S. Dep't of Labor*,
   218 F. Supp. 3d 520 (E.D. Tex. 2016) ...................................................................... 7

*Nevada* v. *U.S. Dep't of Labor,*
    275 F. Supp. 3d 795 (E.D. Tex. 2017) ................................................................. 7

*Panama Refing Co. v. Ryan,*
    293 U.S. 388 (1935) ............................................................................................ 24

*Sebelius v. Auburn Reg'l Med. Ctr.,*
    568 U.S. 145 (2013) ............................................................................................ 22

*Steiner v. Mitchell,*
    350 U.S. 247 (1956) ............................................................................................ 20

*United States v. Jones,*
    132 F.3d 232 (5th Cir. 1998) .............................................................................. 25

*United States v. Mirza,*
    454 F. App'x 249 (5th Cir. 2011) ....................................................................... 25

*Util. Air Regul. Grp. v. EPA,*
    573 U.S. 302 (2014) ............................................................................................ 18

*Walling v. Morris,*
    155 F.2d 832 (6th Cir. 1946), *vacated on other grounds, Morris v. McComb,*
    332 U.S. 422 (1947) ...................................................................................... 10, 22

*Walling v. Yeakley,*
    140 F.2d 830 (10th Cir. 1944) ....................................................................... *passim*

*West Virginia v. EPA,*
    142 S. Ct. 2587 (2022) ............................................................................. 17, 18, 19

*Whitman v. Am. Trucking Ass'ns,*
    531 U.S. 457 (2001) ...................................................................................... 24, 25

*Wirtz v. Miss. Publishers Corp.,*
    364 F.2d 603 (5th Cir. 1966) ........................................................................... 7, 10

*Yakus v. United States,*
    321 U.S. 414 (1944) ............................................................................................ 25

## **Statutes**

29 U.S.C. § 202 ...................................................................................................... 26

29 U.S.C. § 206 ........................................................................................................ 2

29 U.S.C. §207 .................................................................................................... 2, 15

29 U.S.C. § 213 ......................................................................................................... *passim*

41 U.S.C. § 6701 .......................................................................................................... 20, 21

Colorado Six-Day-Week Law, 1937 Colo. Sess. Laws 418 .......................................... 3

Fair Labor Standards Act of 1938, ("FLSA"), Pub. L. No. 75-718, 52 Stat. 1060 ........................ 2

Fair Labor Standards Amendments of 1949, ch. 736, 63 Stat. 920 .......................................... 4, 20

Female Labor Act for Arkansas, Walter L. Pope & C.M. Buck,
   *Digest of the Statutes of Arkansas*, ch. 108, §§ 9084-9090, 1921, amended by Act 33,
   Laws 1937 ..................................................................................................................... 3

Pub. L. No. 87-30, 75 Stat. 65 (1961) ............................................................................ 4, 21

Pub. L. No. 89-601, 80 Stat. 830, 837 (1966) ............................................................... 4, 21

Pub. L. No. 93-259, 88 Stat. 55, 76 (1974) ................................................................... 12

Pub. L. No. 94-489, 90 Stat 2358 (1976) ...................................................................... 21

Pub. L. No. 101-583, 104 Stat. 2871 (1990) .................................................................. 4, 21

## Rules

Fed. R. Civ. P. 56(a) .................................................................................................... 9

## Regulations

29 C.F.R. Pt. 541 ......................................................................................................... 4

29 C.F.R. § 5.2 ............................................................................................................. 21

29 C.F.R. § 541.100 ..................................................................................................... 5, 8

29 C.F.R. § 541.200 ..................................................................................................... 5, 8

29 C.F.R. § 541.300 ..................................................................................................... 5, 8

29 C.F.R. § 541.600 ..................................................................................................... 8, 22

29 C.F.R. § 541.601 ..................................................................................................... 8

29 C.F.R. § 541.602 ..................................................................................................... 5, 8

29 C.F.R. § 541.709 ................................................................................................ 8

29 C.F.R. § 778.111 .............................................................................................. 15

29 C.F.R. § 778.112 .............................................................................................. 15

29 C.F.R. § 778.113 .............................................................................................. 15

29 C.F.R. § 778.117 .............................................................................................. 15

29 C.F.R. § 778.118 .............................................................................................. 15

29 C.F.R. § 778.119 .............................................................................................. 15

29 C.F.R. § 778.120 .............................................................................................. 15

29 C.F.R. § 778.121 .............................................................................................. 15

3 Fed. Reg. 2518 (Oct. 20, 1938) ............................................................................ 4

5 Fed. Reg. 4077 (Oct. 15, 1940) ............................................................................ 5

14 Fed. Reg. 7705 (Dec. 24, 1949) ..................................................................... 5, 6

69 Fed. Reg. 22122 (Apr. 23, 2004) ............................................................... *passim*

81 Fed. Reg. 32391 (May 23, 2016) .................................................................... 5, 7

84 Fed. Reg. 10900 (Mar. 22, 2019) ....................................................................... 7

84 Fed. Reg. 51230 (Sept. 27, 2019) .............................................................. *passim*

**<u>Other Authorities</u>**

122 Cong. Rec. 31566, 31576 (1976) .................................................................... 21

H.R. 15246 ............................................................................................................. 21

*Bona fide*, 1 *Oxford English Dictionary* (1933 ed.) ............................................ 14

*Capacity*, The Oxford English Dictionary (1933 ed.) ........................................... 14

H. Subcomm. No. 4 of the Comm. of Education and Labor, Minimum Wage Standards
(Oct. 28, 1947) ............................................................................................... 19, 20

*Position*, Webster's Dictionary (1942) ................................................................. 14

Report of the Minimum Wage Study Commission (May 1981)............................................. 3, 22

U.S. Bureau of Labor Statistics., Table A-1. *Employment status of the civilian population
   by sex and age*,
      https://www.bls.gov/news.release/empsit.t01.htm (last modified Feb. 3, 2023) ................... 18

## INTRODUCTION

Congress requires that employers pay most employees at least the federal minimum wage for all hours worked, and overtime premium pay of one and one-half times the regular rate of pay for any hours worked over 40 in a workweek. Workers employed in a "bona fide executive, administrative, or professional capacity" are not entitled to these protections. In 1938, Congress expressly delegated to the Secretary of Labor the power to define and delimit these terms through regulation. The Department of Labor ("Department") last updated its regulations implementing this exemption in 2019 (the "2019 Rule"). To fall within the "bona fide executive, administrative, or professional capacity" exemption, an employee generally must perform executive, administrative, or professional duties and be paid a minimum salary of at least $684 per week.

Plaintiffs ask the Court to scrap the Department's approximately 85-year old approach that determines whether employees fall within the executive, administrative, or professional exemption by reference to employees' job duties and salary. Plaintiffs believe that the Fair Labor Standards Act requires a duties-only test for exemption. Plaintiffs' challenge to the Department's approach is doomed from the start because the Fifth Circuit has already upheld the salary level test. The 2019 Rule also comfortably withstands scrutiny on its own terms because the Department has statutory authority to promulgate a salary level test and because Congress's grant of that authority does not offend the nondelegation doctrine. The Court should grant summary judgment to Defendants and deny Plaintiffs' motion for summary judgment.

# BACKGROUND

## I.     Statutory Background

Congress enacted the Fair Labor Standards Act in 1938 to protect employees "from the evil of overwork as well as underpay." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (internal quotation marks omitted); *see generally* Fair Labor Standards Act of 1938, Pub. L. No. 75-718, 52 Stat. 1060  ("FLSA").  The FLSA generally requires covered employers to pay their employees at least the federal minimum wage (currently $7.25 an hour) for all hours worked, and overtime premium pay of one and one-half times the employee's regular rate of pay for any hours worked over 40 in a workweek.  *See* 29 U.S.C. §§ 206(a)(1), 207(a)(1).  Among other exemptions, however, Section 13(a)(1) of the FLSA exempts from both minimum wage and overtime protection "any employee employed in a bona fide executive, administrative, or professional capacity . . . as such terms are defined and delimited from time to time by regulations of the Secretary" of Labor.  29 U.S.C. § 213(a)(1) ("EAP exemption").[1]  The FLSA does not define

---

[1]      The full text of Section 13(a)(1), as it is presently codified, reads as follows:

The provisions of sections 206 (except subsection (d) in the case of paragraph (1) of this subsection) and 207 of this title shall not apply with respect to—

(1) any employee employed in a bona fide executive, administrative, or professional capacity (including any employee employed in the capacity of academic administrative personnel or teacher in elementary or secondary schools), or in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary, subject to the provisions of subchapter II of chapter 5 of Title 5, except that an employee of a retail or service establishment shall not be excluded from the definition of employee employed in a bona fide executive or administrative capacity because of the number of hours in his workweek which he devotes to activities not directly or closely related to the performance of executive or administrative activities, if less than 40 per centum of his hours worked in the workweek are devoted to such activities)[.]

29 U.S.C. § 213(a)(1).

"bona fide executive, administrative, or professional capacity[,]" but instead expressly delegates to the Secretary of Labor the power to define and delimit these terms through regulation. *Id.*

The Section 13(a)(1) exemption is premised on the understanding that individuals employed in a bona fide executive, administrative, and professional capacity typically earn salaries well above the minimum wage and enjoy other privileges to compensate them for their long hours of work, setting them apart from nonexempt workers entitled to overtime pay. *See* Report of the Minimum Wage Study Commission, Vol. IV, at 236, 240 (May 1981); Stein Report at 19, AR Doc. 11.[2]  The exemption was based on provisions contained in the National Industrial Recovery Act of 1933 and state law precedents. Report of Minimum Wage Study Commission, Vol. IV, at 240. Codes adopted under the National Industrial Recovery Act that exempted executive, administrative, and professional employees from maximum hour requirements typically included a salary requirement. *See* Stein Report at 20, AR Doc. 11. Likewise, state wage-and-hour laws in effect around the time of the FLSA's enactment often included a salary requirement in their exemptions for executive, administrative, and supervisory employees. *See, e.g.*, Female Labor Act for Arkansas, Walter L. Pope & C.M. Buck, *Digest of the Statutes of Arkansas*, ch. 108, §§ 9084-9090, 1921, amended by Act 33, Laws 1937; Colorado Six-Day-Week Law, 1937 Colo. Sess. Laws 418 §4(2)(b); *see also* Stein Report at 20, AR Doc. 11 (noting ten state wage-and-hour laws

---

[2]     In 1940, 1949, and 1958, the Department published reports when it revised its Part 541 regulations, which implement the EAP exemption.  *See* Wage and Hour Division, U.S. Department of Labor, *Executive, Administrative, Professional . . . Outside Salesman Redefined: Report and Recommendations of the Presiding Officer [Harold Stein] at Hearings Preliminary to Redefinition* (Oct. 10, 1940) ("Stein Report"), Certification of the Administrative Record, ("AR") Doc. 11, ECF No. 14-1; Wage and Hour Division, United States Department of Labor, *Report and Recommendations on Proposed Revisions of Regulations, Part 541, Harry Weiss, Presiding Officer* (June 30, 1949) ("Weiss Report"), AR Doc. 12; Wage and Hour Division, United States Department of Labor, *Report and Recommendations on Proposed Revision of Regulations, Part 541, Harry S. Kantor, Presiding Officer* (Mar. 3, 1958) ("Kantor Report"), AR Doc. 13.

in effect in 1939 that exempted executive, administrative, and supervisory employees based on a salary qualification).

When Congress amended the FLSA in 1949, it established that "[a]ny . . . regulation . . . of the Administrator of the Wage and Hour Division" then in effect under the FLSA—which, as explained below, included a salary level test for the EAP exemption—and not "inconsistent with the provisions of" the FLSA "shall remain in effect[.]"  Fair Labor Standards Amendments of 1949, ch. 736, § 16(c), 63 Stat. 920.  Beginning in the 1960s, Congress amended Section 13(a)(1) several times to alter the universe of executive, administrative, and professional employees eligible for the exemption.  *See* Pub. L. No. 87-30 § 9, 75 Stat. 65, 71  (1961) (adjusting for expansion of FLSA coverage to retail employees); Pub. L. No. 89-601 § 214, 80 Stat. 830, 837 (1966) (exempting teachers and academic administrative personnel); Pub. L. No. 101-583 § 2, 104 Stat. 2871 (1990) (instructing the Secretary to promulgate regulations exempting computer professionals).  None of these amendments instructed the Department to use a duties-only test for exemption.

## II.    Pre-2019 Regulatory History

For over 80 years, the Department's Part 541 regulations generally have used three criteria to define and delimit the terms "bona fide executive, administrative, or professional capacity."  With some exceptions, for an employee to be exempt: (1) the employee must be paid on a salary basis ("salary basis test"); (2) the employee must receive a minimum salary amount ("salary level test"); and (3) the employee's job must primarily involve executive, administrative, or professional duties ("duties test").   *See* 29 C.F.R. Pt. 541.

The original 1938 regulations set the minimum compensation level at $30 per week for exempt executive and administrative employees.  3 Fed. Reg. 2518 (Oct. 20, 1938).  Two years

later, following extensive public hearings, the Department retained the $30 per week level for executive employees and established a $50 per week ($200 per month) salary level for administrative and professional employees. *See* 5 Fed. Reg. 4077 (Oct. 15, 1940); Stein Report at 1-2, AR Doc. 11. During the hearings, the view that the Administrator lacked authority to use a salary level test "had little support" and stakeholders—including many employers—generally agreed on the desirability of a salary level test. *See id.* at 5, 19.[3]

The salary level test has always been paired with a duties test that a worker also must meet to be subject to the EAP exemption. Under the duties test, the employee's job duties must primarily involve executive, administrative, or professional duties, as defined and delimited in the Department's regulations. *See* 29 C.F.R. §§ 541.100, 541.200, 541.300. Since 1940, the regulations also have required that the employee be paid on a salary basis, defined as a predetermined and fixed salary that is not subject to reduction because of variations in the quality or quantity of work performed. *See id.* § 541.602.

In 1949, the Department developed a two-tiered structure for assessing compliance with the salary level and duties tests. 14 Fed. Reg. 7705 (Dec. 24, 1949). Employers could satisfy either a "long" test based on the pre-1949 test, which combined a more rigorous duties test with a lower salary level, or a "short" test, which combined a less rigorous duties test and a higher salary level. 14 Fed. Reg. at 7706; 84 Fed. Reg. 51230, 51232 (Sept. 27, 2019). The long duties test contained a bright-line, twenty percent limit on the amount of time an employee could spend

---

[3]     This consensus has endured. 84 Fed. Reg. at 51238-39 ("commenters to the [2019] NPRM overwhelmingly agreed that the salary level should be increased"); 81 Fed. Reg. 32391, 32422 (May 23, 2016) ("a small number of commenters [to the 2015 NPRM] . . . suggested that the Department should eliminate the salary level test entirely"); 69 Fed. Reg. 22122, 22172 (Apr. 23, 2004) ("many commenters oppose[d]" the suggestion from "several commenters" to the 2003 NPRM to eliminate the salary level test).

performing nonexempt work (such as manual labor or clerical tasks) and still meet the exemption.  *See* 14 Fed. Reg. at 7706.  The short duties test, in contrast, did not limit the amount of time a higher-earning employee could spend on nonexempt duties and still be treated as exempt.  *See id.*; *see also* Weiss Report at 22-23, AR Doc. 12.   In justifying the pairing of a higher salary level with the less rigorous short duties test, the Department explained that "the higher the salaries paid the more likely the employees are to meet all the requirements for exemption, and the less productive are the hours of inspection time spent in analysis of the duties performed."   Weiss Report at 22-23, AR Doc. 12.  The Department retained the "long" and "short" test structure for the next five decades, updating the salary levels in 1958, 1963, 1970, and 1975.

In 2004, the Department revised the salary level and duties components of the EAP exemption regulations.  69 Fed. Reg. 22122 (Apr. 23, 2004).  The passage of time had eroded the long test salary levels below the amount a minimum wage employee earned for a 40-hour week, and even the short test salary level was not far above the minimum wage.  *Id*. at 22164. Thus, as a practical matter, employers used the more lenient short duties test, and the long duties test fell out of use.  *Id*. at 22126.  The Department determined that "[r]evisions to both the salary tests and the duties tests [were] necessary to restore the overtime protections intended by the FLSA which [had] eroded over the decades."  *Id.* at 22122.  The Department chose to simplify and streamline the regulations by replacing the separate long and short tests with a single "standard" test, which paired a "standard" salary level test of $455 per week with a "standard" duties test for executive, administrative, and professional employees, respectively.  *See id.* at 22122, 22126.

In 2016, the Department published a final rule to, among other things, increase the salary

level from $455 to $913 per week effective December 1, 2016.  81 Fed. Reg. 32391 (May 23, 2016).  That rulemaking was challenged in court, and on November 22, 2016, the U.S. District Court for the Eastern District of Texas enjoined the Department from implementing and enforcing the rule.  *Nevada* v. *U.S. Dep't of Labor,* 218 F. Supp. 3d 520 (E.D. Tex. 2016).  The court subsequently granted summary judgment against the Department, invalidating the rule.  *Nevada* v. *U.S. Dep't of Labor,* 275 F. Supp. 3d 795 (E.D. Tex. 2017).  Although the court held the rule's $913 per week salary level unlawful, it recognized that under binding Fifth Circuit precedent, "the Department has the authority to implement a salary-level test."  *Id*. at 805 & n.5 (citing *Wirtz v. Miss. Publishers Corp.*, 364 F.2d 603, 608 (5th Cir. 1966)).  At the Government's request, its appeal of the summary judgment ruling to the Fifth Circuit was held in abeyance while the Department completed a new rulemaking to update the salary level.

### III.    2019 Final Rule

On March 22, 2019, the Department published a notice of proposed rulemaking to update and revise the EAP exemption regulations.  84 Fed. Reg. 10900 (Mar. 22, 2019).  The Department received more than 116,000 timely comments and issued its final rule on September 27, 2019.  84 Fed. Reg. at 51230-31.  Commenters disagreed on how much to raise the salary level, but employee groups and employer representatives "overwhelmingly agreed that the salary level should be increased[.]" *Id.* at 51233, 51238-40.  In response to a handful of commenters who "questioned whether the Department has authority to have a salary level at all[,]" the Department explained that it is "well established" that the "FLSA's delegation of authority to the Secretary of Labor to 'define[] and delimit[]' the terms of the section 13(a)(1) exemption includes the authority to set a salary level." *Id.* at 51239 (citing cases).  The Department updated the standard salary level by applying the methodology used in the 2004 rule to current data.  This meant that the salary level

was set to match the 20th percentile of earnings of full-time salaried workers in the lowest-wage Census Region (the South) and/or in the retail industry nationally. *Id.* at 51237. This produced the current salary level of $684 per week. *Id.* at 51238; *see, e.g.*, 29 C.F.R. § 541.600.

In updating the salary level, the Department examined the test's historical purpose and reaffirmed many longstanding principles. For example, the Department referenced its long-held view that employees "'who do not meet the salary test are generally also found not to meet the other requirements of the regulations.'" 84 Fed. Reg. 51237 (quoting Kantor Report at 2-3, AR Doc. 13). The final rule also approvingly quoted language dating back to 1949 that the salary level "prevent[s] the misclassification by employers of obviously nonexempt employees" as exempt, and "furnishe[s] a practical guide to [investigators] as well as to employers and employees in borderline cases." *Id.* (quoting Weiss Report at 8, AR Doc. 12). Tying the salary level to the statutory language, the Department also explained that an employee's salary "is a helpful indicator of the capacity in which an employee is employed, especially among lower-paid employees." *Id.*

The final rule made several other changes to the Part 541 regulations. It permitted employers to count nondiscretionary bonuses and incentive payments toward satisfying up to ten percent of the salary level in certain circumstances. 84 Fed. Reg. at 51307 (revising 29 C.F.R. § 541.602(a)(3)). It increased the highly compensated employee total annual compensation level—a higher compensation level that is paired with a reduced duties requirement and provides an alternative basis for exemption under Section 13(a)(1). *Id.* (revising 29 C.F.R. § 541.601). The rule also set special salary levels that apply to U.S. territories and updated the special "base rate" for employees in the motion picture industry. *Id.* at 51306, 51308 (revising 29 C.F.R. §§ 541.100(a)(1), 541.200(a)(1), 541.300(a)(1), 541.709).

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  *Id.*  "In the context of a challenge to an agency action under the Administrative Procedure Act ("APA"), summary judgment is the proper mechanism for deciding, as a matter of law, whether an agency's action is supported by the administrative record and consistent with the APA standard of review."  *Am. Stewards of Liberty v. Dep't of the Interior*, 370 F. Supp. 3d 711, 723 (W.D. Tex. 2019) (alterations and quotation marks omitted).

## ARGUMENT

### I.  The Secretary of Labor Has Statutory Authority to Promulgate a Salary Level Test.

The FLSA explicitly grants authority to the Department to "define[] and delimit[]" the terms "bona fide executive, administrative, or professional capacity[.]"  29 U.S.C. § 213(a)(1). Because the Department lawfully exercised this authority in the 2019 Rule, including by continuing its longstanding practice of having a salary level test, the Court must defer to the agency's interpretation of the statute set forth in the 2019 Rule.  *See Chevron, U.S.A. v. Nat. Res. Def. Council*, 467 U.S. 837, 842-43 (1984).  The text and structure of the FLSA support this conclusion, as does Congress's repeated ratification of the salary level test.  Finally, Plaintiffs' efforts to invoke narrowing constructions, such as the major questions doctrine, are unavailing.

### A.    The Fifth Circuit has already upheld the Department's salary level test.

As an initial matter, binding precedent forecloses Plaintiffs' claim that the Department's salary level test is unlawful.  In *Wirtz v. Mississippi Publishers Corp.*, the Fifth Circuit expressly rejected the contention that "the minimum salary requirement is not a justifiable regulation under Section 13(a)(1) of the Act because [it was] not rationally related to the determination of whether an employee is employed in a 'bona fide executive . . . capacity.'"  364 F.2d at 608.  The court reasoned that "[t]he statute gives the Secretary broad latitude to 'define and delimit' the meaning of the term 'bona fide executive . . . capacity,'" and it rejected the argument "that the minimum salary requirement is arbitrary or capricious."  *Id.* (citation omitted).  Indeed, every circuit court to consider the question has upheld the Department's salary level test.  *See Walling v. Yeakley*, 140 F.2d 830, 832-33 (10th Cir. 1944); *Fanelli v. U.S. Gypsum Co.*, 141 F.2d 216, 218 (2d Cir. 1944); *Walling v. Morris*, 155 F.2d 832, 836 (6th Cir. 1946), *vacated on other grounds, Morris v. McComb*, 332 U.S. 422 (1947).

In attempting to distinguish *Wirtz*, Plaintiffs misconstrue it.  Plaintiffs' Motion for Summary Judgment, ("Pls.' Mot.") at 14, ECF No. 19.  Contrary to Plaintiffs' suggestion, and as noted above, *Wirtz* focused on the statutory language in concluding that the regulations' salary requirement was clear and in accordance with the statute.  364 F.2d at 608.  Failing on that argument, Plaintiffs then pivot to arguing that *Wirtz* "has no bearing today" because the Department has since changed the methodology used to set the salary level.  Pls.' Mot. 14.  This second attempt to distinguish *Wirtz* also fails because the methodology used to set the salary level was not at issue and played no role in the Fifth Circuit's holding that the salary level was a requirement that was within the Secretary's authority to impose as part of the EAP exemption test.

Plaintiffs' argument for a duties-only test is also inconsistent with the Supreme Court's

unanimous decision in *Auer v. Robbins* endorsing the Department's salary basis test.  519 U.S. 452 (1997).  Like the salary level test challenged here, the salary basis test is not expressly mentioned in Section 13(a)(1).  The Supreme Court sanctioned the Department's regulations, under which "one requirement for exempt status under § 213(a)(1) is that the employee *earn a specified minimum amount on a 'salary basis.'*" *Id.* at 455 (emphasis added).  The Court noted that "[u]nder the Secretary's chosen approach, exempt status requires that the employee be paid on a salary basis, which in turn requires that his compensation not be subject to reduction because of variations in the quality or quantity of the work performed." *Id.* at 456 (quotation marks omitted).  And the Court concluded that the Secretary's approach was "'based on a permissible construction of the statute.'" *Id.* at 457 (quoting *Chevron*, 467 U.S. at 843).  The Supreme Court emphasized that "[t]he FLSA grants the Secretary broad authority to 'defin[e] and delimi[t]' the scope of the exemption for executive, administrative, and professional employees."  *Id.* at 456 (quoting 29 U.S.C. § 213(a)(1)).

> **B.**     **The salary level test is wholly consistent with, and certainly not manifestly contrary to, the FLSA.**

The salary level test also passes muster on its own terms.  Congress's direction that the Secretary define and delimit the terms "bona fide executive, administrative, or professional capacity" is an explicit grant of substantive rulemaking authority.  *Chevron*, 467 U.S. at 843-44 ("If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation.").  Regulations implementing Section 13(a)(1), therefore, "are given controlling weight unless they are arbitrary,

capricious, or manifestly contrary to the statute." *Id*. at 844.[4]  Plaintiffs fall well short of establishing that the salary level test is manifestly contrary to Section 13(a)(1).

The Supreme Court underscored the importance of an express delegation of authority to the Department under the FLSA when it considered a parallel FLSA exemption for "any employee employed in domestic service employment to provide companionship services . . . *as such terms are defined and delimited by regulations* of the Secretary" of Labor.  *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 162 (2007) (quoting 29 U.S.C. § 213(a)(15)) (emphasis added).  The question in *Coke* was whether this exemption applies to employees who are hired by "third-party employers" such as home care agencies.  *Id*. at 174-75.  The Supreme Court held that this question was a matter for the agency to decide.  It explained that "the FLSA explicitly leaves gaps, for example, as to the scope and definition of statutory terms such as 'domestic service employment' and 'companionship services[,]'" and that it "provides the Department with the power to fill these gaps through rules and regulations."  *Id*. at 165 (citing 29 U.S.C. § 213(a)(15); Pub. L. No. 93-259, § 29(b), 88 Stat. 55, 76 (1974)).  The Court emphasized that "[t]he subject matter of the regulation in question concerns a matter in respect to which the agency is expert, and it concerns an interstitial matter, *i.e.*, a portion of a broader definition, the details of which, as we said, Congress entrusted the agency to work out."  *Id.*

Here, too, the question whether to treat a salary level as an attribute of "bona fide executive, administrative, or professional capacity" is an interstitial matter that Congress entrusted to the Secretary.  The question is not whether that phrase explicitly requires a salary level test, or even

---

[4]    This legal standard is distinct from that which courts use to evaluate deference to an agency when it claims an implicit grant of rulemaking authority.  *See Chevron*, 467 U.S. at 844 ("Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.").

affirmatively "implies salary level rulemaking power," Pls.' Mot. 13, but whether the salary level test is manifestly contrary to the statute.  In the absence of any such manifest conflict, "the FLSA entrusts matters of judgment such as this to the Secretary, not the federal courts[.]" *Auer*, 519 U.S. at 458.  "Congress did not see fit to leave embraced within the exempted employments every employee who might fall within the general meaning of the phrases employed, but directed the Administrator to specifically define *and delimit* such phrases." *Walling*, 140 F.2d at 832 (emphasis added).  For this reason, Plaintiffs' protests that Congress did not mention a salary test in Section 13(a)(1), Pls.' Mot. 10, are beside the point.  *See Coke* at 168 (noting that "the text of the FLSA does not expressly answer the third-party-employment question" in rejecting argument that third-party employment regulation was inconsistent with FLSA's statutory text).  In *Coke*, Congress did not address whether third-party-paid workers were "employed in domestic service employment," but rather specifically called for the Secretary of Labor to define those terms.  551 U.S. at 166-67 (citing 29 U.S.C. § 213(a)(15)).  The Court recognized that the case raised many questions: "Should the FLSA cover all companionship workers paid by third parties?"; "should the FLSA cover some such companionship workers"?; "[s]hould it cover none?"  *Id.* at 167.  Yet these questions in no way acted to limit the Department's discretion, in light of Congress's express delegation of rulemaking authority.  Likewise, the questions raised by Plaintiffs' arguments— should there be a salary level?, Pls.' Mot. 10; how high should the threshold be?, Pls.' Mot. 13; should incentive pay count toward that salary level?, Pls.' Mot. 27 & n.13—were similarly left to the Department to decide.  *See Coke*, 551 U.S. at 166-68.

None of the other arguments Plaintiffs advance establish that the salary level test is manifestly contrary to the statute.  As an initial matter, the Department has long recognized that Section 13(a)(1) requires an employee to perform certain functions to be exempt.  *See, e.g.*, 69

Fed. Reg. at 22173 ("[T]he Secretary does not have authority under the FLSA to adopt a 'salary only' test for exemption[.]").  That is why the 2019 Rule combines a salary test with a duties test—that is, for an employee to be exempt under the EAP exemption, she must be paid a certain salary *and* perform "executive," "administrative," or "professional" functions.  Plaintiffs suggest that Section 13(a)(1)'s "define[] and delimit[]" language is limited to defining and delimiting the "duties" an employee must perform to be exempt.  *See* Pls.' Mot. at 13.  This cramped interpretation is divorced from the text of Section 13(a)(1), which permits the Department to define and delimit the terms "*bona fide* executive, administrative, or professional *capacity*[.]"  29 U.S.C. § 213(a)(1) (emphases added).  "Capacity" means "position," *Capacity*, The Oxford English Dictionary 89 (1933 ed.), which was in turn understood to mean "[r]elative place, situation, or standing; specif[ically], social or official rank or status," *Position*, Webster's Dictionary at 774 (1942).  An employee's standing, rank, or status certainly involves their work duties, but also reasonably is understood to include their pay.  *See* 84 Fed. Reg. at 51237 ("Salary is a helpful indicator of the capacity in which an employee is employed[.]");[5] *see also* Stein Report at 5, AR Doc. 11 ((hearing participants recognized that the language of Section 13(a)(1) implies a "status" not attained by workers whose pay is close to the minimum wage); *id.* at 19 (explaining that the "term 'executive' implies a certain prestige, status, and importance").

The statute's inclusion of the term "bona fide," which requires an employer's "good faith," "sincerity," or "genuine[ness]," *Bona fide*, 1 *Oxford English Dictionary* (1933 ed.), also reinforces the Department's longstanding interpretation of Section 13(a)(1) as permitting a salary level test.  The Department has long found that such good faith can be demonstrated through the salary the

---

[5]    The 2019 Rule recognizes that salary "is not 'capacity' in and of itself."  84 Fed. Reg. at 51237.

employer pays.  *See* Stein Report at 5, AR Doc. 11 (explaining that "the good faith specifically required by the act is best shown by the salary paid"); *id.* at 19 (explaining that the salary an employer pays an executive employee provides "a valuable and easily applied index to the 'bona fide' character of the employment for which exemption is claimed").  As the 2019 Rule reasonably affirms, "salary level is helpful to determine who is not an exempt executive, administrative or professional employee[.]"  84 Fed. Reg. at 51237.[6]  In so doing, the salary test ensures that the Section 13(a)(1) exemption does not "invite evasion" of the minimum wage and overtime requirements for "large numbers of workers to whom the wage-and-hour provisions should apply." Stein Report at 19, AR Doc. 11.

That the salary level test is consistent with the statutory text distinguishes the 2019 Rule from the regulation at issue in *Addison v. Holly Hill Fruit Products, Inc.*, 322 U.S. 607 (1944). Pls.' Mot. 13.  There, the Supreme Court considered the scope of the FLSA exemption for workers "engaged in canning of agricultural commodities for market" in a certain "area of production." *Addison*, 322 U.S. at 608-09 (ellipses omitted).  The Court held that the phrase "area of production" definitively referred to geographic location only, and so the Department's attempt to restrict the exemption to locations at which fewer than seven employees worked was unlawful because it went

---

[6]     To the extent that Plaintiffs argue that the 2019 Rule is a minimum compensation requirement, they are incorrect.  *Contra* Pls.' Mot. 15-16 & n. 9 (comparing § 213(a)(19) to, *e.g.*, 29 U.S.C. § 207(a)(1)).  The regulations, including the salary level test, govern whether certain employees may be excluded from FLSA protections.  The regulations do not *require* employers to pay employees a particular amount, they simply impose certain requirements on employers who choose to utilize the EAP exemption.  Nor does the FLSA require that "most employees be paid on an hourly basis[.]" Pls.' Mot. 3.  Employers are free to pay nonexempt workers a salary, and the Department's regulations explain how to compute overtime for salaried nonexempt employees. *See, e.g.*, 29 C.F.R. § 778.113.  In fact, employers are free to pay nonexempt workers any number of ways, such as piece rate, a job or day rate, or via commissions.  *See* 29 C.F.R. §§ 778.111-.112, 778.117-.121.

beyond a geographic restriction.  *See id.* at 611, 616-18.  By contrast, the salary level test is grounded in the terms "bona fide" and "capacity" in Section 13(a)(1), and neither term is definitively limited to an employee's duties.

None of the structural signals that Plaintiffs identify make the salary level test unlawful.  It is not, as Plaintiffs suggest, inconsistent for Congress to define some other FLSA exemptions by reference to certain trades or occupations while granting the Department discretion to define others.  *Contra* Pls.' Mot. 13, 15.  Congress may both name some specific occupations, such as a baseball player or a fisherman, 29 U.S.C. § 213(a)(5), (19), that are exempt from FLSA protections, and expressly delegate to the Department the authority to define and delimit the scope of other exemptions.  In *Coke*, the Court explained that some third-party-paid workers were entitled to the FLSA's wage protections before Congress enacted the exemption for "any employee employed in domestic service employment to provide companionship services," but that did not prevent the Department from utilizing Congress's express delegation to define and delimit the terms "any employee employed in domestic service employment to provide companionship services" to include third-party-paid workers.  551 U.S. at 162, 167.  So too may Congress determine that a salary level test applies to some exempt employees, *see* 29 U.S.C. § 213(a)(19) (exempting baseball players if they are paid a salary greater than what they would earn if they were paid the minimum wage for 40 hours per week), while also giving the Department the discretion to determine whether and how a salary level test should apply under the EAP exemption.

### C.   Plaintiffs' proposed limiting constructions do not apply.

None of the principles advanced by Plaintiffs require the extremely narrow construction of the Department's statutory authority Plaintiffs seek.  Plaintiffs' two-paragraph attempt to defend their narrow reading of Section 13(a)(1) by reference to "freedom of contract" is inconsistent with

the Supreme Court's recognition in *Coke* that courts must respect Congress's decision to entrust the Department to define interstitial matters in the FLSA.  Plaintiffs' theory of construction is also without limit: arguably, the entire FLSA and its implementing regulations—not to mention a substantial number of *all* federal regulations—could be said to in some sense interfere with a pure free-market right to contract.  Just as the Supreme Court in *Coke* afforded the Department great deference to define and delimit "any employee employed in domestic service employment to provide companionship services," so too this Court should afford deference to the Department's longstanding interpretation that Section 13(a)(1) permits a salary level test.  *See* 551 U.S. at 162.

Plaintiffs' effort to invoke the major questions doctrine is no more effective.  *See* Pls.' Mot. 20-22.  The doctrine applies only to those "'extraordinary cases' . . . in which the 'history and the breadth of the authority that [the agency] has asserted,' and the 'economic and political significance' of that assertion, provide a 'reason to hesitate before concluding that Congress' meant to confer such authority."  *West Virginia v. EPA*, 142 S. Ct. 2587, 2608 (2022) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000)).  This is no such extraordinary case.

Starting with the text of the FLSA, Congress specifically and expressly delegated to the Department the authority to define and delimit the EAP exemption.  As explained above, the 2019 Rule fits comfortably within the Department's authority under Section 13(a)(1).  Plaintiffs' challenge, thus, does not implicate the principle that "cryptic" statutory provisions should not be read to "delegat[e]" the power to decide extraordinarily significant questions.  *Brown & Williamson*, 529 U.S. at 159-60.  This is simply not a case where an agency is attempting to use vague statutory language to justify expansive regulatory action.  Moreover, Plaintiffs' suggestions about different procedural and substantive requirements that Congress could have placed on the

17

Department's authority to define and delimit the EAP exemption, Pls.' Mot 21-22, are irrelevant to the inquiry of whether a statute is too cryptic to permit an agency's exercise of significant regulatory authority.

Second, the Department has exercised its authority under the FLSA to establish a salary level test to define and delimit, in part, the EAP exemption since 1938. Section 13(a)(1) thus is not a "previously little-used backwater" provision of the FLSA, but rather a longstanding provision that employers nationwide have used for decades. *West Virginia*, 142 S. Ct. at 2613. The Department does not purport to have "discover[ed]" a previously "unheralded power" in "a long-extant statute." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014); *see also Nat'l Fed'n of Indep. Bus., ("NFIB") v. OSHA*, 142 S. Ct. 661, 662 (2022) ("OSHA has never before imposed such a mandate."); *Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2489 (2021) ("This claim of expansive authority under § 361(a) is unprecedented."). Rather, the 2019 Rule builds upon a foundation of nearly a century of precedent.

Third, this is not a case where the "sheer scope" of the agency's claimed authority suggests it is an "extraordinary case" to which the major questions doctrine is relevant. *See West Virginia*, 142 S. Ct. at 2608 (quoting *Brown & Williamson*, 529 U.S. at 159). Unlike the agency regulations that the Supreme Court has identified as subject to the major questions doctrine, the regulations here do not seek to regulate "vast swaths of American life." *Id.* at 2621. Plaintiffs acknowledge that the salary level "would exclude 1.2 million workers who might otherwise qualify for the EAP Exemption." Pls.' Mot. 6. To place this number in context, the United States workforce currently numbers around 165 million. *See* U.S. Bureau of Labor Statistics., Table A-1. *Employment status of the civilian population by sex and age*, https://www.bls.gov/news.release/empsit.t01.htm (last modified Feb. 3, 2023). Thus, the 2019 Rule affects less than 1% of the national workforce. The

rule's effect is far from "vast" when considered in context.  For example, the Department estimated annualized direct employer costs in the first 10 years following the rule's effective date to be $173.3 million, and annualized transfers (*i.e.*, higher employee earnings, paid by employers to employees) of $298.8 million over the first ten years.  84 Fed. Reg. at 51232.  To give such numbers context, in the first year after the rule's effective date, "[t]otal first-year private sector costs compose 0.013 percent of private sector payrolls nationwide" and ".002 percent of national private sector revenues[.]" *Id.* at 51304.  By comparison, the Court has applied the major questions doctrine in addressing an agency action that was expected to reduce GDP by at least $1 trillion by 2040, *see West Virginia*, 142 S. Ct. at 2604, and another with an economic impact of approximately $50 billion, *see Ala. Ass'n of Realtors*, 141 S. Ct. at 2489.  In sum, the Supreme Court has applied the major questions doctrine only when addressing actions with far greater reach and economic impact than the 2019 Rule.

Finally, as explained below, Section 13(a)(1) does not violate the non-delegation doctrine, so a narrowed construction is not required to avoid such a violation.  *See infra* at II.

### D.    Congress has ratified the salary level test.

In any event, Congress's ratification of the salary level test rebuts any suggestion that Congress has not contemplated salary level rules in the Section 13(a)(1) context.  *See* Pls.' Mot. 15.  By 1949, the EAP exemption regulations applying a salary level test had been well established for over a decade.  During hearings preceding amendments to the FLSA that year, Congress received competing input from business groups and employee advocates.  For example, the Chamber of Commerce advocated for Congress to set the salary level, rather than the Secretary, *see* H. Subcomm. No. 4 of the Comm. of Education and Labor, Minimum Wage Standards (Oct. 28, 1947), Vol. 2, 1019; another employer organization asked that the "the salary limitation which

is now included by the Administrator" "be stricken" because it "is wholly artificial," *see id.* at Vol. 2, 1375; and an employee advocate organization proposed increasing the salary level for exemption, *see id.* at Vol. 5, 1071-72.  The Department also testified about the establishment of the salary level test: the Department's Solicitor of Labor confirmed that the salary level test was upheld in *Walling v. Yeakley*, *supra*, and that the Department's Part 541 regulations were upheld in other courts of appeals cases as well.  *See* H. Subcomm. No. 4, Vol. 3, 2765.  *Cf. id.* at Vol. 3, 2559-63 (testimony from the Department's Wage and Hour Administrator, Harry Weiss, that it was "easier for an administrative agency to define those terms [executive, administrative] than it is for Congress," in part because the Department "can change [the definitions] from time to time as difficulties develop with the term").  "When Congress amended the [FLSA] in 1949 it provided that pre-1949 rulings and interpretations by the Administrator should remain in effect unless inconsistent with the [1949 statutory amendments]."  *Mitchell v. Ky. Fin. Co.*, 359 U.S. 290, 292 (1959); *see* Fair Labor Standards Amendments of 1949, ch. 736, § 16(c), 63 Stat. 920 (ratifying "[a]ny order, regulation, or interpretation of the Administrator of the Wage and Hour Division" then in effect under the FLSA).  Congress accordingly "underst[ood]" and ratified the regulations imposing the salary level requirement.  *See Steiner v. Mitchell*, 350 U.S. 247, 255 & n.8 (1956); *Alstate Constr. Co. v. Durkin*, 345 U.S. 13, 16-17 (1953) (declining to "repudiate an administrative interpretation of the [FLSA] which Congress refused to repudiate" in 1949).

Though Congress's 1949 ratification puts to bed any doubt about the Department's statutory authority to establish a salary level test, Congress also ratified the Department's EAP exemption regulations in 1976.  That year, Congress amended the Service Contract Act, which governs benefits and other terms of employment for service employees performing services for government contracts.  *See generally* 41 U.S.C. § 6701.  Congress excluded from the definition of

"service employee" "any person employed in a bona fide executive, administrative, or professional capacity, as those terms are defined in part 541 of title 29, Code of Federal Regulations, as of July 30, 1976, and any subsequent revision of those regulations[.]"  Pub. L. No. 94-489, 90 Stat 2358 (1976); *see also* 29 C.F.R. § 5.2(m) (excluding from protections of the Davis-Bacon Act "[p]ersons employed in a bona fide executive, administrative, or professional capacity as defined in part 541 of this title").  In so doing, Congress ratified the Department's EAP exemption regulations, including its salary level test.  *See* 41 U.S.C. § 6701(3)(c) (currently codified location); *see also* 122 Cong. Rec. 31566, 31576 (1976) (Statement of Rep. Perkins, "Bona fide executive, administrative[,] and professional employees are excluded from coverage by present departmental regulations. H.R. 15246 maintains this exclusion and does not alter the status quo with respect to any employees presently covered.").

The history of congressional inaction provides further evidence that a salary level test is permissible under Section 13(a)(1).  Congress has amended the FLSA many times since 1938, including at least three amendments to Section 13(a)(1) itself.  *See* Pub. L. No. 87-30 § 9, 75 Stat. 65, 71-74 (1961) (adjusting for expansion of FLSA coverage to retail employees); Pub. L. No. 89-601 § 214, 80 Stat. 830, 837 (1966) (exempting teachers and academic administrative personnel); Pub. L. No. 101-583 § 2, 104 Stat. 2871, 2871 (1990) (instructing the Secretary to promulgate regulations exempting computer professionals).  None of these amendments called the Department's longstanding salary level test into question.  "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change."  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 382 n. 66 (1982).  Where, as here, "Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the congressional failure to

21

revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress." *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 159 (2013) (quoting *CFTC v. Schor*, 478 U.S. 833, 846 (1986)); *see also Costanzo v. Tillinghast*, 287 U.S. 341, 345 (1932) (a court "should give great weight" to the "failure of Congress to alter or amend [a statute], notwithstanding [a] consistent construction by the department charged with its enforcement" "*even if* [the court] doubt[s] the correctness of the [administrative] ruling") (emphasis added).[7]

Congress's repeated decision not to disturb the Department's salary level regulations is consistent with the FLSA's purpose. The minimum wage and overtime pay requirements of the FLSA are "among the nation's most important worker protections[,]" 69 Fed. Reg. at 22122, and the Section 13(a)(1) exemption was premised on an understanding that the exempted workers typically earn salaries well above the minimum wage, *see* Report of the Minimum Wage Study Commission, Vol. IV, at 240. Nothing in the text, history, or purposes of the statute provides a basis to overturn the 85-year-old approach used by the agency charged with implementing the FLSA.

Plaintiffs fail to grapple with the consequences of a court declaring that the Department lacks authority to have a salary level test. For the better part of a century, the salary level and duties tests have worked in tandem to distinguish those who Congress intended the FLSA to protect from employees who serve in a "bona fide executive, administrative, or professional capacity." Even though Plaintiffs only ask the court to declare 29 C.F.R. § 541.600 unlawful (Complaint at 19, ECF No. 1), a ruling that exemption status must turn solely on an employee's duties would

---

[7]     Given the Solicitor of Labor's testimony at the 1949 hearings, Congress likewise was aware of, and did not disturb, the unanimous view of the Courts of Appeals that the salary test was lawful. *See Walling*, 140 F.2d at 832-33; *Fanelli*, 141 F.2d at 218; *Morris*, 155 F.2d at 836; *see also Merrill Lynch*, 456 U.S. at 382 n. 66.

impact not only all of the salary level and salary basis test regulations, but also the duties test regulations—which are calibrated to work with the current salary test and would need to be revised if no longer paired with a salary test. *See* 69 Fed. Reg. at 22172 (eliminating the salary level test "would require a significant restructuring of the regulations and probably the use of more rigid duties tests.").

For the reasons stated above, the Department has statutory authority to implement a salary level test in defining and delimiting the EAP exemption. Accordingly, the Court should grant summary judgment to Defendants on Count I.

## II.    The FLSA is a Lawful Delegation of Congressional Authority.

Plaintiffs' argument that if the FLSA grants the Department the authority to promulgate the salary level test then the statute represents an unconstitutional delegation of legislative authority fares no better. Pls.' Mot. 23-29. Courts have long held that Section 13(a)(1)'s authorizing the Department to "define[] and delimit[]" the terms "bona fide executive, administrative, or professional capacity" is a lawful delegation from Congress. *See e.g.*, *Walling*, 140 F.2d at 832  ("We think there can be no question that the power" to "define and delimit" the EAP exemption "was lawfully delegated[.]"); *Fanelli*, 141 F.2d at 218 ("In conferring such authority upon the Administrator," to "define and delimit" the terms used in Section 13(a)(1), "Congress acted in accordance with a long established tradition (frequently sanctioned by the Supreme Court), and did not unconstitutionally delegate powers vested in the legislative branch.").

The Supreme Court has reaffirmed "time and again" "that a statutory delegation is constitutional as long as Congress 'lay[s] down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform.'" *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (quoting *Mistretta v. United States*, 488 U.S. 361,

372 (1989)); *see Big Time Vapes, Inc. v. FDA*, 963 F.3d 436 (5th Cir. 2020) (same). "It is 'constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of th[e] delegated authority.'" *Big Time Vapes*, 963 F.3d at 442 (quoting *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946)); *see also Loving v. United States*, 517 U.S. 748, 773 (1996) ("Separation-of-powers principles are vindicated, not disserved, by measured cooperation between the two political branches of the Government, each contributing to a lawful objective through its own processes."). The Fifth Circuit has emphasized that "[t]hose standards . . . are not demanding." *Big Time Vapes*, 963 F.3d at 442 (quotation marks omitted). Even though Congress has delegated authority since "the beginning of the government," *id.* (quotation marks omitted), the Supreme Court "has found only two delegations to be unconstitutional," *id.* at 446. One "provided literally no guidance for the exercise of discretion," and the other "conferred authority to regulate the entire economy on the basis of no more precise a standard than stimulating the economy by assuring 'fair competition.'" *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 474 (2001) (referring to *Panama Refing Co. v. Ryan*, 293 U.S. 388 (1935), and *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935)).

By contrast, in the more than 80 years since those two decisions, the Supreme Court has consistently upheld "Congress' ability to delegate power under broad standards[,]" *Mistretta*, 488 U.S. at 373, and "ha[s] almost never felt qualified to second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law," *American Trucking*, 531 U.S. at 474-75 (quotation marks omitted). For example, the Supreme Court has upheld statutes authorizing the Secretary of War to determine and recover "excessive profits" from military contractors, *Lichter v. United States*, 334 U.S. 742, 785-86 (1948) (quotation marks omitted); authorizing the Price Administrator to fix "fair and equitable" commodities prices,

*Yakus v. United States*, 321 U.S. 414, 420 (1944) (quotation marks omitted)); authorizing the Federal Communications Commission to regulate broadcast licensing as "public interest, convenience, or necessity" requires, *National Broadcasting Co. v. United States*, 319 U.S. 190, 225–26 (1943) (quotation marks omitted); authorizing the Securities and Exchange Commission to ensure that a holding company's structure does not "unfairly or inequitably distribute voting power among security holders," *American Power & Light*, 329 U.S. at 104-05; directing the Sentencing Commission to promulgate then-binding Sentencing Guidelines for federal crimes, *Mistretta*, 488 U.S. at 374-77; and directing the Environmental Protection Agency to set nationwide air-quality standards limiting pollution to the level required to "protect the public health," *American Trucking*, 531 U.S. at 472 (quotation marks omitted).

The Fifth Circuit has likewise "upheld Congress's delegations." *Big Time Vapes*, 963 F.3d at 442 n.17 (citing, as examples, *United States v. Jones*, 132 F.3d 232, 239-40 (5th Cir. 1998) (upholding delegation of authority to the Department of Justice to "define nonstatutory aggravating factors" to determine which offenders were "death-eligible" under the Federal Death Penalty Act); and *United States v. Mirza*, 454 F. App'x 249, 256 (5th Cir. 2011) (per curiam) (upholding International Emergency Economic Powers Act's delegation, which authorizes the President to declare a national emergency and limit certain types of economic activity related to that threat)).

Congress's express grant of authority to the Department to define and delimit the terms "bona fide executive, administrative, or professional capacity" falls well within the wide range of delegations approved by the Supreme Court and the Fifth Circuit. Section 13(a)(1) contains an "intelligible principle" to guide the Department's discretion and marks the "boundaries of this delegated authority." *Mistretta*, 488 U.S. at 372-73. The Department's EAP exemption regulations may exempt only those employed in a "bona fide executive, administrative, or

professional capacity[,]" 29 U.S.C. § 213(a)(1).  The Department could not, for example, rely on a salary level test without an accompanying duties test, because doing so would not fully account for the "capacity" in which the employee was engaged.  84 Fed. Reg. at 51239.  The meaningful statutory language limits on the Department's discretion set Section 13(a)(1) apart from the standard-less delegation at issue in *Panama Refining*.  *Contra* Pls.' Mot. 25.  Plaintiffs' reliance on *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022) is likewise unavailing.  There, the Fifth Circuit held that the Dodd-Frank Act unconstitutionally delegated authority to the SEC "to determine which subjects of its enforcement actions are entitled to Article III proceedings with a jury trial, and which are not," *id*. at 461, while offering "*no guidance* whatsoever" as to that determination, *id.* at 462.  Again, Section 13(a)(1) limits how the Department can define the EAP exemption.

This intelligible principle of only exempting those employed in a "bona fide executive, administrative, or professional capacity" is also consistent with the FLSA's "clearly delineate[d] general policy," *Mistretta*, 488 U.S. at 372-73, of "correct[ing] and . . . eliminat[ing]" the "existence . . . of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers," 29 U.S.C. § 202; *see also, e.g.*, *Barrentine*, 450 U.S. at 739, and of spreading employment by incentivizing employers to hire more employees rather than imposing longer hours on current employees, *see Davis v. J.P. Morgan Chase*, 587 F.3d 529, 535 (2d Cir. 2009).[8]  And by charging the agency to "define[] and delimit[]" the terms "bona fide executive, administrative, or professional capacity," Congress set

---

[8]      Contrary to Plaintiffs' suggestion, Pls.' Mot. 28, the Supreme Court did not suggest that the Department may not rely on the FLSA's statement of policy in defending against a nondelegation challenge.  *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018).  The Court, rather, acknowledged the high-level principle that statutory language should be interpreted in a fair manner, and held that certain FLSA exemptions should not be read narrowly.  *Id.* Congress's statement of policy in Section 202 is part of the statute that Congress enacted and the Court should fairly consider the provision.

forth a policy "of having specific criteria laid down . . . by which employer and enforcement agency could determine . . . whether an employee fell within or without one of the exempted employments." *Walling*, 140 F.2d at 832.  Accordingly, the Court should grant summary judgment to Defendants on Count II of the Complaint.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment should be granted and Plaintiffs' motion for summary judgment should be denied.

Dated:  February 10, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRAD P. ROSENBERG
Assistant Director, Federal Programs Branch

*/s/ Brian Rosen-Shaud*
BRIAN C. ROSEN-SHAUD
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, NW
Washington D.C. 20005
(202) 305-7667
brian.c.rosen-shaud@usdoj.gov