## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

|  |  |
|---|---|
| ROBERT MAYFIELD; and<br>R.U.M. ENTERPRISES, INC., | Case No. 1:22-cv-00792-RP |
| Plaintiffs, | **ORAL HEARING REQUESTED** |
| v. |  |
| U.S. DEPARTMENT OF LABOR and<br>MARTIN WALSH, in his official capacity<br>as U.S. Secretary of Labor, |  |
| Defendants. |  |

## OPPOSITION TO DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT AND REPLY IN
## SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

LUKE A. WAKE*
ERIN WILCOX (Cal. Bar No. 337427)
**PACIFIC LEGAL FOUNDATION**
555 Capitol Mall, Suite 1290
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
Email: LWake@pacificlegal.org
Email: EWilcox@pacificlegal.org
*Admitted pro hac vice*

JOHN KERKHOFF*
**PACIFIC LEGAL FOUNDATION**
3100 Clarendon Boulevard, Suite 1000
Arlington, VA 22201
Telephone: (202) 888-6881
Facsimile: (916) 419-7747
Email:  JKerkhoff@pacificlegal.org
*Admitted pro hac vice*

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES ........................................................... ii

INTRODUCTION .......................................................................... 1

ARGUMENT ................................................................................... 2

I.      The Department's Salary-Level Rule is Ultra Vires ......................................... 2

     A.    The Text Confirms a Focus on Duties, Not Salary-Levels ..................... 3

     B.    The Canons of Construction Confirm Plaintiffs' Interpretation ........... 5

     C.    The Federalism and Avoidance Canons Apply ...................................... 7

     D.    The Major Questions Doctrine Applies .................................................. 7

     E.    The Executive Branch is Not Entitled to Deference ............................ 10

         1.    *Chevron* Leaves the Stage Under the Canons of Construction . 10

         2.    Congress Never Ratified the 2019 Salary-Level Rule ............... 12

     F.    No Court Has Addressed the Department's Authority to Adopt a Salary-Level Rule that Excludes 20 Percent of EAP Employees ......... 14

II.    The Department Fails to Identify Any Governing Intelligible Principle Limiting the Secretary's Discretion ................................................................... 15

CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935) ....... 2, 17, 19-20

*Addison v. Holly Fruit Products, Inc.*, 322 U.S. 607 (1944) ..................................... 5-6

*Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
    141 S. Ct. 2485 (2021) ......................................................................... 14

*Am. Power & Light Co. v. SEC*, 329 U.S. 90 (1946) ................................................... 18

*Auer v. Robbins*, 519 U.S. 452 (1997) ........................................................................ 15

*Big Time Vapes v. FDA*, 963 F.3d 436 (5th Cir. 2020) ............................................. 19

*Brackeen v. Haaland*, 994 F.3d 249 (5th Cir. 2021) ................................................. 11

*Cargill v. Garland*, 57 F.4th 447 (5th Cir. 2023) ...................................................... 12

*Chevron, U.S.A. v. NRDC*, 467 U.S. 837 (1984) ............................................. 10-12, 15

*Contender Farms, L.L.P. v. U.S. Dep't of Agric.*,
    779 F.3d 258 (5th Cir. 2015) ............................................................... 11

*Crowell v. Benson*, 285 U.S. 22 (1932) ......................................................................... 7

*Davis v. Michigan Dep't of Treasury*, 489 U.S. 803 (1989) ........................................ 3

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades
    Council*, 485 U.S. 568 (1988) ............................................................... 12

*Encino Motorcars, LLC v. Navarro*, 138 S.Ct. 1134 (2018) ...................................... 20

*Epic Sys. Corp. v. Lewis*, 138 S.Ct. 1612 (2018) .................................................. 5, 11

*Fanelli v. U.S. Gypsum Co.*, 141 F.2d 216 (2d Cir. 1994) .................................... 15-16

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*,
    529 U.S. 120 (2000) .............................................................................. 9-10

*Forbes Pioneer Boat Line v. Bd. of Comm'rs of Everglades Drainage
    Dist.*, 258 U.S. 338 (1922) ................................................................... 13

*Gonzales v. Oregon*, 546 U.S. 243 (2006) ..................................................................... 9

*Graham v. Goodcell*, 282 U.S. 409 (1931) ................................................. 13

*Gregory v. Ashcroft*, 501 U.S. 452 (1991) ................................................. 7

*Helix Energy Sols. Grp., Inc. v. Hewitt*, No. 21-984, 2023 WL 2144441
(U.S. Feb. 22, 2023) .................................................................. 3-4, 15

*Jarkesy v. Sec. & Exch. Comm'n*, 34 F.4th 446 (5th Cir. 2022) ........................... 7, 19

*Jones v. Liberty Glass Co.*, 332 U.S. 524 (1947) ........................................ 13

*Lichter v. United States*, 334 U.S. 742 (1948) .......................................... 18

*Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007) ........................ 6, 12, 16

*Louisiana Pub. Serv. Comm'n. v. F.C.C.*, 476 U.S. 355 (1986) ........................... 11

*Mistretta v. United States*, 488 U.S. 361 (1989) ....................................... 17

*NBC v. United States*, 319 U.S. 190 (1943) .............................................. 18

*Nevada v. United States Dep't of Lab.*, 218 F.Supp.3d 520 (E.D. Tex. 2016) ..... *passim*

*Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935) ................................. 2, 15-17, 20

*Regions Bank v. Legal Outsource PA*, 936 F.3d 1184 (11th Cir. 2019) .................... 13

*Tiger Lily, LLC v. U.S. Dep't of Hous. and Urb. Dev.*,
992 F.3d 518 (6th Cir. 2021) ............................................................ 14

*United States v. Jones*, 132 F.3d 232 (5th Cir. 1998) .................................. 18

*Walling v. Yeakley*, 140 F.2d 830 (10th Cir. 1944) .................................... 15-16

*West Virginia v. EPA*, 142 S.Ct. 2587 (2022) ....................................... 8, 10-11

*Whitman v. American Trucking Association*, 531 U.S. 457 (2001) .......................... 17

*Wirtz v. Miss. Publishers Corp.*, 364 F.2d 603 (5th Cir. 1966) ......................... 14

*Yakus v. United States*, 321 U.S. 414 (1944) ........................................... 19

## **Statutes**

29 U.S.C. § 213(a)(1) ............................................................... 1, 3, 5

## <u>Miscellaneous</u>

Adler, Jonathan H., West Virginia v. EPA*: Some Answers About Major Questions*, 2022 Cato Sup. Ct. Rev. 37 (2022) ........................................................ 8

Black's Law Dictionary (11th ed. 2019) ..................................................... 13

Merriam-Webster Dictionary ........................................................................... 4

**INTRODUCTION**

The Fair Labor Standards Act (FLSA) exempts "any" employee who performs "executive, administrative or professional" duties from the Act's hourly pay and overtime requirements. 29 U.S.C. § 213(a)(1) (EAP Exemption). And although the Secretary of Labor is authorized to "define and delimit" what duties count as "executive, administrative or professional," nothing in the FLSA's text implies an authority to add unrelated employment conditions that remove millions of employees from the Exemption and deny opportunities for higher bonuses. Yet in conflict with the text and structure of the Act, as well as the substantive canons of statutory construction, the Department of Labor claims a roving power to establish and freely modify salary-level rules that exclude 20 percent of all EAP employees.

The Department claims that the Secretary is entitled to deference as to *any decision* he might make in crafting salary-level rules. *See* Defs.' Motion at 13 (arguing that the text "in no way … limit[s] the Department's discretion"). But no deference is afforded when the meaning of the text is clear, or where the canons of construction militate against the agency's interpretation. And deference doctrines have no application at all where an agency has inferred an open-ended authority to decide legislative policy on matters of great economic and political importance—like whether millions of employees will be covered or exempted from the FLSA's core provisions.

The Department also claims that Congress somehow ratified the Secretary's interpretation of the EAP Exemption, such that he can establish any salary-level rule with whatever methodology he likes. But that is not how ratification works. At most

Congress can ratify past administrative action, not an agency's interpretive lens. And there is no authority for ratifying substantive rules of this sort.

Yet even assuming the statute grants the unfettered discretion that the Secretary claims (it does not), the Final Rule is unlawful. If the Secretary really gets total deference for *any decision* he might make when crafting salary-level rules, then the statute lacks an intelligible principle. The Department maintains that there is an intelligible principle because the FLSA would not allow the Secretary to impose a salary-level test without a corresponding duties test. But that tells us nothing about what principle *limits* the salary-level test—either in form or substance. And anyway, the Supreme Court rejected this basic argument in *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935)—wherein the Court found that the National Recovery Act (NRA) provided no intelligible principle to guide the President's exercise of discretion to issue industry codes, even though the Act imposed certain limitations. Thus, for the same reasons as in *Schechter* and *Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935), this Court must hold that the Department's construction violates the non-delegation doctrine.

## ARGUMENT

## I.    The Department's Salary-Level Rule is Ultra Vires

The EAP Exemption covers "any" employee "employed in a bona fide executive, administrative or professional capacity." Therefore, "any" employee genuinely working in the roll of an "executive" is exempt—meaning exempt status turns on whether (or not) they are performing executive functions. *See Nevada v.*

2

*United States Dep't of Lab.*, 218 F.Supp.3d 520, 529 (E.D. Tex. 2016) (defining "executive" as someone "[c]apable of performance; operative … [a]ctive in execution, energetic … [a]pt or skillful in execution."). The canons of construction confirm that the Exemption does not turn on the employees' salary-level because Congress expressly required specific salaries for the baseball player exemption but included no such requirements in Section 213(a)(1). As such, there is no basis for deferring to the Department's assertion of an open-ended authority to set and freely modify salary-level rules—especially where such a claim of such authority implicates the major questions doctrine and raises serious constitutional issues. No court has addressed the issues raised here.

### A.    The Text Confirms a Focus on Duties, Not Salary-Levels

As Justice Kavanaugh recently observed, the EAP Exemption "focuses on whether the employee performs executive [administrative, or professional] duties, not how much an employee is paid…." *Helix Energy Sols. Grp., Inc. v. Hewitt*, No. 21-984, 2023 WL 2144441, at *13 (U.S. Feb. 22, 2023) (Kavanaugh, J., concurring). In arguing otherwise, the Department ignores the meaning of the terms "executive, administrative, or professional" and numerous other contextual clues.[1] To begin, the Department's approach is flawed because it focuses on just two terms ("bona fide" and "capacity"). This insular approach fails to contextualize these terms with reference to "their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*,

---

[1] The Department does not dispute the dictionary definitions that Plaintiffs provided for the terms "executive, administrative [and] professional"—all of which require a functional analysis of the employees' duties. Pls.' Motion at 12.

489 U.S. 803, 809 (1989).

Even accepting the Department's definition of "capacity" as entailing some conception of one's "relative place, situation, or standing" or one's "social or official rank or status," the Department is inferring a great deal. In ordinary usage these terms speak to the outward appearance of one's official position or authority within a hierarchy. *E.g.*, Merriam-Webster Dictionary, (defining "place" as "prestige accorded to one of high rank"); (defining "status" as one's "position or rank in relation to others"). That comports with Plaintiffs' interpretation because it speaks to the employees' function within the company.

Likewise, the Department sees only what it wants in the term "bona fide." The parties agree that the term "bona fide" means that the employee must genuinely be employed in an "executive, administrative or professional capacity." But one cannot say whether a worker is "genuinely" employed as an EAP employee without first looking to the meaning of the terms "executive, administrative or professional." And as the Department acknowledges those terms require a focus on duties. Defs.' Motion at 26. As such the most natural reading is to interpret the EAP Exemption as requiring a showing that the employee is genuinely in a position that performs EAP duties, regardless of "how much" he or she is "paid."[2] *Helix*, 2023 WL 2144441, at *13 (Kavanaugh J., concurring). *See also Nevada*, 218 F.Supp.3d at 529 ("Congress

---

[2] It is no answer for the Department to say that a salary-level test is needed to ensure that employers are classifying employees in "good faith." The Department is free to adopt its own enforcement priorities, which might entail greater scrutiny for lower-salaried employees. But there is no authority for excluding employees who perform EAP duties.

defined the EAP exemption with regard to duties, which does not include a minimum salary-level.").

## B.     The Canons of Construction Confirm Plaintiffs' Interpretation

If there is any doubt whether the text authorizes salary-level rules, the canons of construction resolve the matter. The canons strongly militate against inferring authority to dictate salary-level rules because, elsewhere, Congress was explicit when it conditioned the FLSA exemption for baseball players on a requirement to pay a specific salary—just as Congress was explicit when it established compensation level requirements in various provisions of the Act. Pls.' Motion at 15−16 (invoking the *expressio unius* canon). *E.g., Epic Sys. Corp. v. Lewis*, 138 S.Ct. 1612, 1617 (2018) ("Congress has shown it knows exactly how to specify [such requirements]"). The Department has no answer other than the bald assertion that Congress can choose to explicitly set compensation requirements in one instance and to implicitly "give the Department the discretion to determine whether and how" to impose such requirements in the next. Defs.' Motion at 16. But the canons presume that when Congress chooses to impose *express* requirements in one provision, we should not *infer* similar requirements in provisions lacking that express language.[3]

By the same measure, the Department's construction is foreclosed by *Addison v. Holly Fruit Products, Inc.*, 322 U.S. 607 (1944). There, the Court held that the

---

[3] Likewise, the Department has no answer to Plaintiffs' argument that the structure of Section 213(a)(1) implicitly denies any salary-level rulemaking authority, given that Congress gave examples of professions that qualified for the EAP Exemption (*e.g.*, teachers, outside sales) without regard to salary. Pls.' Motion at 13.

Department lacked authority to condition an agricultural exemption on the employer's size. The agency contends that *Addison* is inapposite because, in that case, the Secretary inferred authority to consider the size of the business when the statutory text made clear that the exemption turned only on whether the work was carried out within the "area of production." Defs.' Motion at 15. But this only underscores the problem with inferring an authority to condition the EAP Exemption on salary-level requirements that are not inherent in the concept of working in a "bona fide executive, administrative or professional capacity."

As in the present dispute, the Secretary took an elastic view of his "define and delimit" power in *Addison*. He argued that in defining and delimiting the "area of production," he could establish business size limitations because the relative size of a business might matter in contextualizing the "area of production" for various industries. *See Addison*, 322 U.S. at 632 (Rutledge, J., dissenting) (opining that "[s]ize certainly is not irrelevant"). But the majority rejected that construction because Congress had expressly conditioned other exemptions on the size of the business.

The Department relies on *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007), in urging this Court to disregard the structure of the Act. But unlike in *Coke*, the Department is inferring authority to exclude significant numbers of employees from an exemption in conflict with the text. And the present case is distinct because the Department has inferred authority to impose salary-level conditions on the EAP Exemption even though Congress has *explicitly* imposed such conditions on the baseball player exemption. There was nothing analogous in *Coke*.

### C.     The Federalism and Avoidance Canons Apply

The federalism canon requires that this Court must reject the Secretary's inferred power to dictate salary-level rules. The premise of the federalism canon is simple. Congress is expected to speak in "unmistakably clear" terms if it intends to allow federal regulation on matters of traditional state concern. *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991). Therefore, it is improper to *infer* that the FLSA delegated power to regulate salaries because that is a matter of traditional state concern.[4]

Likewise, the avoidance canon requires this Court to reject the Department's inferred power to dictate salary-level rules. The Department blithely dismisses Plaintiffs' avoidance arguments on the view that the canon applies only when a court definitively finds an interpretation unconstitutional. But the avoidance canon is triggered whenever there is "serious doubt" as to whether an interpretation violates the Constitution. *Crowell v. Benson*, 285 U.S. 22, 62 (1932). In this case a narrowing construction is required because Plaintiffs have advanced formidable non-delegation arguments. And there is all the greater reason to take Plaintiffs' arguments seriously given that the Fifth Circuit recently found a non-delegation violation in *Jarkesy v. Sec. & Exch. Comm'n*, 34 F.4th 446, 462–63 (5th Cir. 2022).

### D.     The Major Questions Doctrine Applies

This Court must also reject the Department's elastic view of its "define and delimit" power under the major questions doctrine. *See Nevada*, 218 F.Supp.3d at 530

---

[4] Freedom of contract matters only because the Department seeks to displace Texas law without *clear authority*.

n.5 (concluding that salary-level regulation is an issue of "great economic or political significance"). The Department believes the doctrine does not apply because the Secretary has claimed authority to impose salary rules for many years. But there are two problems. First, Department's *methodology* is new. True, the Department has long enforced salary-level rules, but its basic approach changed dramatically in 2004, 2016, and 2019. *See* Pls.' Motion at 6–7. And *West Virginia* makes clear that a dramatic change in approach to regulation implicates the major questions doctrine. 142 S.Ct. at 2599 (concerning dramatic change after 50 years).

Second, and more importantly, no single factor is decisive in deciding whether the major questions doctrine applies—which means that the doctrine applies whenever any factor, or combination of factors, signals that the case concerns an issue of great economic or political concern for which our system expects Congress to speak clearly. *See West Virginia v. EPA,* 142 S.Ct. 2587, 2620 (2022) (Gorsuch, concurring). *See also* Jonathan H. Adler, West Virginia v. EPA*: Some Answers About Major Questions*, 2022 Cato Sup. Ct. Rev. 37, 56 (2022) (observing that the Supreme Court has yet to set definite "criteria."). For example, the Supreme Court "has indicated that the doctrine applies when an agency claims the power to resolve a matter of great 'political significance' …." *Id.* That is precisely what the Department claims here. The Department cannot deny that any attempt to raise salary-level requirements in Congress—or to make other significant changes to federal employment standards—would be politically fraught and fiercely debated. *Id.*

(stressing that the doctrine applies where agency action has cut-off "robust debates").[5]

The major questions doctrine is also implicated when an agency seeks "to regulate" "a significant portion of the American economy." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 123 (2000). This factor clearly cuts in favor of applying the doctrine because labor and employment standards have far-reaching and multifarious effects across all sectors of the economy—affecting non-profits, state and local government, and all manner of industry. In arguing otherwise, the Department rests on its estimate that the Final Rule excludes only 1.2 million EAP employees. But what matters is that the Department is claiming a remarkable power to decide (with any prospective rulemaking) whether ***47.6 million employees*** will be covered by the FLSA's core provisions—or excluded, subject to whatever conditions the Secretary deems fit. *See* Pls.' Motion at 1–2. And in any event, the Department is misguided if it means to suggest that salary-level rules are too narrow of a regulatory subject to trigger the major questions doctrine. By comparison, the Supreme Court has applied the doctrine in review of regulations affecting only the tobacco industry, and on such narrow issues as medical licensing for doctors who perform euthanasia. *See Brown & Williamson*, 529 U.S. 120 (2000); *Gonzales v. Oregon*, 546 U.S. 243, 246 (2006). Those subjects (though narrow) were deemed too important to leave to agency discretion without a clear statement from Congress.

Yet another factor cuts in favor of the major questions doctrine. The doctrine

---

[5] It is highly doubtful that proponents of such legislation could have mustered the political consensus necessary to raise salary-level rules through an Act of Congress in either 2016 or 2019.

"may apply when an agency seeks to intrud[e] into an area that is the [] domain of state law." *West Virginia*, 142 S.Ct. at 2587 (Gorsuch, concurring) (internal citations omitted). That is true here, as with the federalism canon, because law governing the employer-employee relationship is of traditional state concern. Pls.' Motion at 17.

Moreover, the major questions doctrine requires courts to take a pragmatic view of what Congress would likely do if it was to delegate the power claimed. *See Brown & Williamson*, 529 U.S. at 133. If Congress had intended to delegate an authority to set salary-level rules, it would have imposed parameters. *See* Pls.' Motion at 22. At the very least we should expect a clear signal as to what sort of considerations should weigh into the Secretary's decision-making process.

For all of these reasons the major questions doctrine requires Congress must speak clearly if it is to authorize salary-level regulation. The Department suggests that Congress was clear enough. Defs.' Motion at 17 (arguing there is nothing "cryptic" about Congress' decision to delegate the power to "define and delimit" the EAP Exemption). But, in truth, the Department is inferring a lot. Again, the most straightforward reading requires the Secretary to define and delimit the nature of the work EAP employees must perform. *See Nevada*, 218 F.Supp. 3d at 530 ("[N]othing in the EAP exemption indicates that Congress intended the Department to define and delimit with respect to a minimum salary-level.").

E.     **The Executive Branch is Not Entitled to Deference**

1.     ***Chevron* Leaves the Stage Under the Canons of Construction**

The Department asserts that it should prevail under *Chevron, U.S.A. v. NRDC,*

467 U.S. 837 (1984), so long its construction is not "manifestly contrary to the FLSA." Defs.' Motion at 11. But Plaintiffs have shown that the Department's interpretation violates the FLSA because it ignores the plain text, the structure of the act, the canons of construction and the major questions doctrine.[6] That settles the issue.

As a threshold matter, the major questions doctrine resolves this case in Plaintiffs' favor without need to engage in *Chevron*'s two-step inquiry. *See West Virginia*, 142 S.Ct. at 2610−16 (rejecting the agency's interpretation without employing *Chevron*). But even if *Chevron* is in play (it is not), there can be no deference unless: (*Chevron* Step-1) the statute is "truly ambiguous" after a "holistic reading of the statute" and (*Chevron* Step-2) the agency's construction is "permissible." *Brackeen v. Haaland*, 994 F.3d 249, 425 (5th Cir. 2021).

For the reasons set forth already, there is no ambiguity. Pls.' Motion at 12-14. The text and the canons of construction foreclose the Department's construction. *See Brackeen*, 994 F.3d 425 (a court must exhaust all the traditional tools of construction to determine whether there is an ambiguity). As the Supreme Court has explained, "where the canons supply an answer, *Chevron* leaves the stage." *Epic Sys. Corp.*, 138 S.Ct. at 1630 (internal quotations omitted). *See Edward J. DeBartolo Corp. v. Fla.*

---

[6] In any event, "an [] agency does not receive deference ... merely by demonstrating that 'a statute does not expressly negate the existence of a claimed [] power ....'" *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 269 (5th Cir. 2015) (quoting *Ry. Labor Execs.' Ass'n v. Nat'l Mediation Bd.*, 29 F.3d 655, 671 (D.C. Cir. 1994)). And the Department is wrong if it contends that this Court should presume it wields regulatory powers absent either an express or implied statutory authorization. *See Louisiana Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 357 (1986) ("[A]n agency literally has no power to act ... unless and until Congress confers power upon it ....").

*Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 574-75 (1988) (refusing *Chevron* deference because the agency's interpretation raised "serious constitutional problems"); *Cargill v. Garland*, 57 F.4th 447, 451 (5th Cir. 2023) (affirming that substantive canons trump *Chevron*).

The Department suggests that it deserves deference simply because Congress used magic words in delegating authority to "*define and delimit*" the terms of the EAP Exemption. *See* Defs.' Motion at 12−16. The only supposed authority for this position is *Coke*, 551 U.S. at 158, which concerned regulation promulgated under the domestic service exemption. But *Coke* is inapposite. There, the Court considered whether the Department was entitled to deference in interpreting the exemption for "domestic service employment" as encompassing companion care workers employed by a third-party agency. Yes, the Court gave deference of some sort. *Id*. at 176. But, unlike here, there was no argument that the statute's plain text and the canons of construction unambiguously precluded the Department's interpretation. *Id*. at 166−67 (noting that the statutory argument was focused on the putative goals of the FLSA). Here, the statute's text and the canons of construction are dispositive.

### 2. Congress Never Ratified the 2019 Salary-Level Rule

The Department also claims that this Court should defer to its interpretation on the view that Congress has ratified or acquiesced to the Department's Final Rule. That cannot be. First, while Congress can ratify administrative orders and similar actions on technical matters with explicit statutory language, it cannot retroactively bless substantive regulations like the Final Rule. *See Forbes Pioneer Boat Line v. Bd.*

*of Comm'rs of Everglades Drainage Dist.*, 258 U.S. 338, 339 (1922) (stating that ratification exists to deal with "slight technical defect[s,]" but refusing to recognize a ratification that would alter legal relations between parties). Second, Congress cannot ratify the Secretary's preferred interpretative lens for the EAP Exemption. *Compare e.g.*, *Graham v. Goodcell*, 282 U.S. 409, 430 (1931) (ratifying a tax collected after a limitations period because this merely remedied "mistakes and defects in the administration of government …."). And third, ratification is not forward-looking. *See* Black's Law Dictionary (11th ed. 2019) (defining "ratification" as "[c]onfirmation and acceptance of a *previous act*.") (emphasis added). So, even if Congress ratified the Department's salary-level regulations as they existed in 1949 or 1976, that would not mean that Congress has written a blank check for the Secretary to modify salary-level rules in whatever manner he might deem fit going forward.

This leaves only the Department's claim that the agency is entitled to deference because Congress has never repudiated its interpretation. But to the extent that legislative acquiesce is relevant, it should be considered alongside relevant text-based canons of construction. *See Jones v. Liberty Glass Co.*, 332 U.S. 524, 533, (1947) ("The doctrine of legislative acquiescence is at best only an auxiliary tool for … interpreting ambiguous statutory provisions"); *Regions Bank v. Legal Outsource PA*, 936 F.3d 1184, 1196 (11th Cir. 2019) ("[L]egislative silence is a poor beacon to follow in construing a statute. And [the Supreme Court] has repeatedly warned that congressional silence alone is ordinarily not enough to infer acquiescence."). And in any event, a claim of legislative acquiesce cannot trump the federalism and avoidance

canons—much less the major questions doctrine. *See Tiger Lily, LLC v. U.S. Dep't of Hous. and Urb. Dev.*, 992 F.3d 518, 524 (6th Cir. 2021) (concluding that "mere congressional acquiescence in the [agency's] assertion that [a national eviction moratorium] was supported by [law] … does not make it so, especially given that the plain text … indicates otherwise."). *Cf. Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2485, 2489 (2021) (applying the major questions doctrine to invalidate the eviction moratorium).

### F.    No Court Has Addressed the Department's Authority to Adopt a Salary-Level Rule that Excludes 20 Percent of EAP Employees

The Department maintains that this Court is bound by the Fifth Circuit's decision in *Wirtz v. Miss. Publishers Corp.*, 364 F.2d 603 (5th Cir. 1966); however, it admits that *Wirtz* had no occasion to consider the question presented here—whether and at what point the Secretary may exceed his statutory authority in employing different methodologies for setting salary-level rules. Defs.' Motion at 10. But even if the Court approved of the Department's 1960's methodology, nothing in *Wirtz* (or anywhere else) precludes this court from deciding whether dramatically different methodologies violate the FLSA. *See Nevada*, 218 F.Supp.3d at 530 n.3 ("*Wirtz* offers no guidance on the lawfulness of the Department's Final Rule salary-level.").

Further, *Wirtz* is non-binding because there was no occasion to consider the federalism and avoidance canons raised here. And moreover, none of the Department's statutory cases, from the 1940s–60s, employ the rigorous textualist analysis that the Supreme Court now requires. Defs.' Motion at 10 (citing *Walling v. Yeakley*, 140 F.2d 830 (10th Cir. 1944); *Fanelli v. U.S. Gypsum Co.*, 141 F.2d 216 (2d

Cir. 1994); *Walling v. Morris*, 155 F.2d 832 (6th Cir. 1946)). As Judge Mazzant observed, "*Wirtz* did not evaluate the lawfulness of a salary-level test under *Chevron* step one, as *Wirtz* predated *Chevron*." *Nevada*, 218 F.Supp.3d at 531.

Finally, the Department's reliance on *Auer v. Robbins*, 519 U.S. 452 (1997), is misplaced. Defs.' Br. at 11. *Auer* concerned the application of the Department's salary-level regulations to police sergeants—not "the validity of the salary basis test …." *Nevada*, 218 F.Supp.3d at 528. The Supreme Court has never considered whether the Secretary has power to impose salary-level rules—much less whether the Secretary may violate the Act in adopting any given methodology. *See Helix*, 2023 WL 2144441 at *6 n.2; *Supra* at *13 (Kavanaugh J., concurring) ("[I]t is questionable whether the Department's regulations … will survive if … challenged as inconsistent with the Act.").

## II.     The Department Fails to Identify Any Governing Intelligible Principle Limiting the Secretary's Discretion

The Supreme Court requires that every statute delegating rulemaking authority must be governed by an "intelligible principle." *Panama Refining Co.*, 293 U.S. at 430. But no principle governs the Department's claimed salary-level rulemaking power. And no court has identified an intelligible principle in 85 years.

The Department relies on *Yeakley*, 140 F.2d 830, and *Fanelli*, 141 F.2d 216, which upheld the Department's salary-level rules against non-delegation challenges. But critically, neither case speaks of the intelligible principle test, or offers analysis explaining how the FLSA guides the Secretary's exercise of discretion. *Yeakley* concluded that it was acceptable for Congress to delegate an open-ended authority for

the Secretary to make "rational[] and reasonabl[e]" rules. 140 F.2d at 832. But that is not an intelligible principle. *See Panama Refining*, 293 U.S. at 420 (rejecting the suggestion that a delegation is permissible simply because the Executive is presumed to act "for what he believes to be the public good."). And *Fanelli* was even more perfunctory in concluding that the "define and delimit" delegation was within Congress' power. 141 F.2d at 216.

An intelligible principle would provide direction for the Secretary in deciding how he should go about setting or modifying salary-level rules. But the Department asserts that Congress gave the Secretary an unbridled power to "define and delimit" the EAP Exemption using whatever methodology he deems fit, and argues further that this entails discretion to decide all sorts of policy issues like whether to have a salary-level test at all, whether the Department should enforce a uniform salary-level test across the nation or across industries, whether and to what extent to count incentive payments, etc. Defs.' Motion at 13 (relying on *Coke*). These arguments flatly contradict the claim that Congress provided a governing standard.

The Department imagines a shadowy intelligible principle in the mere fact that Congress decided to delegate rulemaking power. In the Department's words: there is an intelligible principle because "Congress set forth a policy 'of having specific criteria laid down … by which employer and enforcement agency could determine … whether an employee fell within or without one of the exempted employments.'" Defs.' Motion at 26–27 (quoting *Yeakley*, 140 F.2d at 832). But it is not sufficient for Congress to decide to punt on such weighty questions as who is covered by the FLSA's core

provisions and who is exempt. The intelligible principle test requires more. *See Panama Refining*, 293 U.S. at 430 (rejecting any approach that would allow Congress to transfer its lawmaking function "at will and as to such subjects as it chooses …"). Precedent confirms that something must objectively guide and channel the exercise of discretion. *E.g.*, *Mistretta v. United States*, 488 U.S. 361, 374 (1989) (finding an intelligible principle because Congress provided a list of factors to consider); *Whitman v. American Trucking Association*, 531 U.S. 457, 473–74 (2001) (finding an intelligible principle in the charge to set requisite air quality standards to protect public health because that determination had to be based on findings reflecting the latest science).

The Department suggests it is sufficient that Congress has decided upon a policy of letting the Executive Branch write all the important rules. But that cannot be. If that was enough, the Supreme Court would have had no trouble upholding the NRA in *Panama Refining* and *Schechter*. After all, in those cases Congress had decided that it was most efficient to have the President decide whether to prohibit transport of hot oil, and what codes should govern various industries. Yet the Supreme Court squarely rejected those arguments, even as the government maintained that it was necessary for Congress to delegate in sweeping terms during a national emergency.[7] *See* Br. of United States, *ALA Schechter v. Poultry Corp. v.*

---

[7] Precedent allows greater flexibility for delegations where it would be impracticable for Congress to have spoken more precisely. *E.g.*, *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946) (concluding it would have been "unreasonable" to expect Congress to "appraise before-hand the myriad situations to which it wishes a particular policy to be applied …"). *See also United States v. Jones*, 132 F.3d 232, 239 (5th Cir. 1998) (upholding a delegation, with parameters, because "Congress could not list every possible aggravating factor."). The Department raises no such argument.

*United States*, Nos. 854 and 864, p. 134 (Oct. Term, 1934) (arguing that the delegation was justified by "unprecedented economic chaos").

The Department argues that the Supreme Court has upheld broad delegations. But unlike here, there was always something objectively guiding the exercise of discretion. For example, in *NBC v. United States*, Congress gave meaningful direction because the Communications Act enumerated a list of what the Federal Communications Commission could do, which provided narrowed context for an otherwise nebulous delegation to regulate in the public intertest. 319 U.S. 190, 214−15 (1943). Likewise, in *American Power & Light*, the statute provided adequate direction because, when read in context, it gave only limited discretion to decide whether a holding company had an "unduly or unnecessarily complicate[d] structure" or had "unfairly or inequitably distribute[d] voting power among security shareholders." 329 U.S. at 104−05 (concluding that these terms entailed objective standards). And in *Lichter v. United States*, and *Yakus v. United States*, there was an intelligible principle governing the fixing of commodity prices and for determining what constituted "excess profits" because the Price Administrator had to account for certain factors. *Lichter,* 334 U.S. 742, 783−787 (1948) (concluding that the statute made clear the "factors appropriate for consideration" and that the Executive was charged with a fact-finding mission); *Yakus*, 321 U.S. 414, 423 (1944) (observing that the Administrator was required to look to "prevailing prices during the designated base period," and specified factors affecting prices). By contrast, nothing in the FLSA guides the Secretary in setting salary-level rules.

What is more, the Fifth Circuit has never endorsed the Department's anemic vision of the intelligible principle test. On the contrary, *Jarkesy* confirms that the intelligible principle test has real teeth.[8] And consistent with that opinion, *Big Time Vapes v. FDA*, affirmed that Congress must decide upon a "general policy."[9] 963 F.3d 436, 442-44 (5th Cir. 2020) (finding Congress established such policy in deciding regulation should protect public health and prevent young people from accessing tobacco). But there is no policy governing the exercise of discretion here because FLSA is utterly silent on how (or whether) salary-level rules should be developed.

The Department claims that there is an intelligible principle because the text forecloses the agency from enforcing a salary-level rule without a corresponding duties test. But the Supreme Court confronted and rejected this basic argument in *Schechter*. In that case the government argued that there was an intelligible principle because the President was prohibited from approving industrial codes proposed by associations that were not representative of industry as a whole, and because the President was foreclosed from approving codes that would encourage monopolies or that would unduly suppress small business. The Court held that those limitations did not guide the President's exercise of discretion in setting industry codes. *Schechter*, 295 U.S. at 538 (concluding "these restrictions leave virtually untouched … the wide field of legislative possibilities …"). And the same is true here. Yes, the text limits the

---

[8] Like the statute considered in *Jarkesy*, 34 F.4th 446, 462, nothing in the FLSA provides direction for the Department in setting salary-level rules.

[9] *E.g.*, *United States v. Mirza*, 454 Fed.Appx. 249 (2011) (recognizing Congress had decided the important matter in authorizing the President to "deal with any unusual and extraordinary threat, which has its source … outside the United States").

Exemption to employees who perform EAP duties. But that does not, in any way, guide the exercise of discretion in setting unrelated salary rules.

Finally, the Department asserts that the FLSA's top-level goals provide direction for setting salary-level rules. But it strains credulity to say that the FLSA's general goal of improving "labor conditions" provides an intelligible principle here, when the general goal of stimulating the economy and promoting fair competition was insufficient in *Schechter* and *Panama Refining*.[10]

## CONCLUSION

For the forgoing reasons, this Court should grant Plaintiffs' motion for summary judgment and deny Defendants' cross-motion.

DATED:  March 3, 2023.

Respectfully submitted,

LUKE A. WAKE*
ERIN WILCOX (Cal. Bar No. 337427)
**PACIFIC LEGAL FOUNDATION**
555 Capitol Mall, Suite 1290
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
Email: EWilcox@pacificlegal.org
Email: LWake@pacificlegal.org
*Admitted pro hac vice*

---

[10] The Department admits that *Encino Motorcars, LLC v. Navarro*, 138 S.Ct. 1134, 1142 (2018), requires a "fair reading" of the EAP Exemption. But this precludes any inference that the FLSA's general goals provide authority for putting a thumb on the scale to exclude EAP employees—much less an intelligible principle for crafting salary-level rules that exclude EAP employees.

JOHN KERKHOFF*
**PACIFIC LEGAL FOUNDATION**
3100 Clarendon Boulevard, Suite 610,
Arlington, VA 22201
Telephone: (202) 888-6881
Facsimile: (916) 419-7747
Email: JKerkhoff@pacificlegal.org
*Admitted pro hac vice

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on March 3, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western District of Texas using the appellate CM/ECF system.